IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANE WALSH,

       Plaintiff,

v.                                                                                                                    CV 14-590 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

Diane Walsh originally applied for Disability Insurance Benefits on July 26, 2010, and Supplemental Security Income on January 19, 2011, based on a chronic headache disorder, inflamed colon, memory loss, history of three strokes, and problems with her musculoskeletal and vascular systems. (Administrative Record ("AR") 95-96, 102, 195.) After her applications were denied at all administrative levels, she brought this proceeding for judicial review. The case is before me now on Walsh's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, a response filed by the Commissioner of the Social Security Administration ("SSA"), and Walsh's reply. (Docs. 22, 25, 30.) For the reasons explained below, I grant Walsh's motion and remand this case to the SSA for proceedings consistent with this opinion.

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. I may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Diane Walsh is a fifty-five-year-old woman with a college education. (AR 95, 196.) She worked in customer service and as a telemarketer from 1996-2004, as a dispatcher for a refrigeration company from 1998-2003, as a worker with autistic children from 2002-2003, and as a direct care giver for adults from 2004-2009. (AR 196, 246.) Walsh claims disability beginning on September 1, 2009. (AR 97.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

Beginning as late as April 6, 2009, anesthesiologist Craig Nairn, M.D., provided Walsh with a monthly prescription for amitriptyline, a tricyclic antidepressant used to treat symptoms of

depression.[1] (AR 353.) He wrote a letter on Walsh's behalf on June 29, 2011, stating that Walsh "secondarily suffers from depression and anxiety related to the long standing [physical conditions]." (AR 595.) Dr. Nairn continued prescribing amitriptyline on a monthly basis through at least May 25, 2012. (*See, e.g.*, AR 312, 365, 403, 652, 711.)

A reviewing physician for New Mexico Disability Determination Services filled out a Psychiatric Review Technique on March 4, 2011, based on Walsh's medical records at that time. (AR 563.) That physician concluded that Walsh was not functionally limited by any mental health conditions. (AR 575.)

Walsh saw Theresa Miller, Ph.D., on June 1, 2011, for an initial evaluation. (AR 596.) Dr. Miller noted that Walsh could not answer questions in detail and appeared anxious and disorganized. (AR 597.) Dr. Miller wrote that Walsh's "account of hallucinations seemed questionable, but without further evaluation will be hard to say for sure." (*Id.*) Dr. Miller noted that Walsh needed further evaluation to rule out depression, post-traumatic stress disorder ("PTSD"), and an anxiety disorder. (*Id.*) Dr. Miller provided "rule-out" diagnoses of major depression, PTSD, and an anxiety disorder. (*Id.*)

Christina Bryant, MA, LMHC, performed a psychosocial assessment of Walsh on June 9, 2011. (AR 598.) Walsh presented with anxiety, suspiciousness, insomnia, psychosis, depression, hallucinations/delusions, disorientation, intrusive memories, and a fearful affect. (AR 604.) Bryant diagnosed Walsh with PTSD and noted that Walsh needed further evaluation to rule out major depressive disorder with psychotic features and mood-incongruent psychotic features, medical causes for depression, a personality disorder with psychotic features, and prescription

---

[1] *Amitriptyline*, NATIONAL INSTITUTES OF HEALTH, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html (last visited June 9, 2015).

abuse. (AR 604-05.) Bryant assessed Walsh's GAF at 32.[2] Bryant also filled out a Mental Residual Functional Capacity Assessment and noted that Walsh had marked limitations in all functional areas except that she was moderately limited in her ability to travel to unfamiliar places or use public transportation and not significantly limited in her ability to be aware of normal hazards and take appropriate precautions. (AR 809-10.)

Manuel Gurule, M.D., a neurologist, evaluated Walsh on July 15, 2011. (AR 607.) Dr. Gurule noted that Walsh suffers from chronic headaches and that a "significant component of the headache is likely related to underlying depression and anxiety." (AR 608.)

Walsh established care with Gail Bell, LPCC, on July 25, 2012. (AR 845.)[3] Bell assessed Walsh with a psychotic disorder, opiate dependence, and sedative hypnotic dependence. (AR 838, 840, 841, 843, 848.) Bell conducted a medical assessment of Walsh's mental ability to do work-related activities and largely concurred with Bryant's earlier assessment of numerous marked limitations. (AR 832-33.)

### HEARING TESTIMONY

At the hearing on August 23, 2012, the ALJ questioned Walsh, who was not represented by an attorney or other representative. (AR 49-59.) Walsh testified that she suffers from chronic depression and anxiety and regularly experiences anxiety, suspiciousness, disorientation, hallucinations and delusions, and obtrusive memories. (AR 51-52.)

---

[2] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between thirty-one and forty is assessed when the patient is believed to have "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Walsh's mental health providers used this scoring method.

[3] AR 831-51 were made part of the record by the Appeals Council and were not presented to the ALJ. (AR 6.)

### THE ALJ AND APPEALS COUNCIL'S DECISIONS

ALJ Ann Farris issued her decision on October 5, 2012. (AR 36.) The ALJ determined that Walsh suffers from the severe impairments of chronic pain with headaches and Raynaud's syndrome and the nonsevere impairments of depression, anxiety, and a history of stroke-like events without long-lasting effects. (AR 31-32.) The ALJ gave little weight to Bryant's opinion because Bryant is not an acceptable medical source and her opinion was not corroborated by a psychologist or psychiatrist. (AR 32.) The ALJ further noted that the Walsh's mental health records lacked a longitudinal mental health treatment history. (*Id.*) Based on these deficiencies, the ALJ gave little weight to Dr. Miller's or Bryant's opinion. (*Id.*)

The ALJ found that Walsh's testimony and the record as a whole suggested that Walsh suffered from no limitations with her activities of daily living, social functioning, or concentration, persistence or pace, and that Walsh had experienced no episodes of decompensation. (*Id.*) The ALJ ultimately determined that Walsh could perform her past work as a home health care worker or a psychiatric technician. (AR 35.) On that basis, the ALJ found that Walsh was not disabled.

### DISCUSSION

Walsh argues that the ALJ made several errors at step four. Walsh contends that the ALJ erred by failing to develop the record or order a psychological consultative evaluation ("CE") for Walsh's mental impairments, by failing to support the RFC with substantial evidence, and by failing to resolve a conflict between the testimony of the vocational expert and the occupational requirements of Walsh's previous work.

Walsh argues that the insufficiency of longitudinal treatment evidence combined with record evidence suggesting the reasonable possibility of severe limitations from Walsh's mental

impairments gave rise to the ALJ's duty to develop the record. Walsh makes a somewhat confusing argument with regard why the ALJ should have ordered a psychological CE. Walsh appears to argue that because the ALJ found anxiety and depression to be medically determinable impairments and then discounted Bryant's opinion, the ALJ should then have ordered the psychological CE. Rolled into this argument, but not expounded upon, appears to be a claim that the ALJ did not appropriately evaluate Bryant's opinion.

The Commissioner counters that Walsh did not take antidepressants, her treatment for depression and anxiety was isolated in the record, and that the ALJ sufficiently explained her reasoning for disagreeing with Bryant and Dr. Miller. Further, the Commissioner argues that the ALJ did not have a duty to develop the record because there was sufficient evidence upon which to base her decision.

With regard to Walsh's mental impairments, the claimant bears the burden of proving that she is disabled. *Maes*, 522 F.3d at 1096. However, administrative hearings are non-adversarial and the ALJ is responsible for developing an adequate record on the issues raised. *Id.* This duty is "heightened" when the claimant is not represented by an attorney. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). To trigger the duty of inquiry, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citations omitted). While "[t]he duty of inquiry takes on special urgency when the claimant . . . is unrepresented by counsel," *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987), the ALJ is not required to "exhaust every potential line of questioning," *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994). "'The ALJ should order a consultative exam when evidence in the record establishes a *reasonable possibility* of the existence of a disability and the result of the

consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.'" *Madrid*, 447 F.3d at 791 (quoting *Hawkins*, 113 F.3d at 1169) (emphasis in original).

The Commissioner cites *White v. Barnhart* for the proposition that the ALJ is not required to develop the record further simply because she rejected certain medical opinions. 287 F.3d 903, 908 (10th Cir. 2002). In *White*, the Tenth Circuit found no error where the ALJ had adequate information from the claimant's treating physician to evaluate that opinion, the opinion was internally inconsistent, and the ALJ did not recontact the treating physician. *Id.*

The Commissioner accurately notes that "[i]n the case of a nonacceptable medical source . . . , the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012). However, the ALJ here assessed Walsh with depression and anxiety at nonsevere levels, discounted Bryant's opinion, and proceeded to discuss no evidence supporting or discounting Walsh's mental impairments. In contrast to *White*, the ALJ discounted records from Dr. Miller because there was no longitudinal treatment history related to Walsh's mental health and discounted Bryant's opinion because Bryant is not an acceptable medical source. The ALJ did not simply evaluate the records as being internally inconsistent, as they were in *White*.

Discounting the record evidence of mental impairments while simultaneously finding a medically determinable impairment makes it impossible for me to follow and review the ALJ's reasoning. If the ALJ truly discounted the opinions from Bryant and Dr. Miller and found no other record evidence supporting Walsh's allegations of mental health impairments, then how could the ALJ determine that Walsh had the medically determinable impairments of anxiety and depression?

I find that the evidence of record establishes a reasonably possibility that a psychological consultative exam could be of material assistance in resolving the issue of Walsh's disability. *See Madrid*, 447 F.3d at 791. By concluding that the record lacked sufficient longitudinal evidence to evaluate the opinions of Bryant and Dr. Miller in context, the ALJ implicitly concluded that she had inadequate information to rule on the issues of mental health. Therefore, failing to order a psychological consultative examination was error requiring remand. On remand, the ALJ will order a psychological consultative examination from an appropriate source.

Because the results of the psychological consultative examination may change the outcome of this case, I do not address whether the RFC was supported by substantial evidence or whether the ALJ properly concluded that Walsh could perform her previous work.

## CONCLUSION

I find that the ALJ erred at step four by failing to order a consultative psychological examination when the evidence of record was inadequate on the issues of depression and anxiety. On remand, the ALJ will order a psychological consultative examination and address all medical source opinions under the guidelines in 20 C.F.R. §§ 404.1527(c), 416.927(c), and any applicable Social Security Rulings.[4] The motion is GRANTED, and the case is remanded to the SSA for further proceedings consistent with this opinion.

---

[4] Social Security Rulings ("SSRs") are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　William P. Lynch
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.